UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ARTHUR NEIL EVANS,            :      NO. 1:09-CV-00791
                              :
            Plaintiff,        :
                              :
      v.                      :      **OPINION AND ORDER**
                              :
UNITED PARCEL SERVICE, INC.,  :
                              :
            Defendant.        :


        This matter is before the Court on Defendant's Motion for Summary Judgment (doc. 24), Plaintiff's Response in Opposition (doc. 27), and Defendant's Reply (doc. 43).   The Court held a hearing on this matter on May 17, 2011.  For the reasons indicated herein, the Court GRANTS IN PART AND DENIES IN PART Defendant's motion.

**I.  Background**

        Plaintiff Arthur Neil Evans, a "feeder driver"[1] for Defendant United Parcel Service, Inc., ("UPS"), brings FMLA retaliation and age discrimination claims, after losing his employment with Defendant after more than twenty-five years, at the

_____

        [1]A "feeder driver" in Defendant's company drives tractor trailers full of parcels from one UPS location to another.  A "package driver" drives smaller trucks to deliver packages to their destinations.  The Court sees no real distinction between the two sorts of drivers, who all ensure that packages make their way in timely fashion to their destinations, and who all are subject to the same rules, and in many cases supervisors.

age of 46.[2]    Defendant claims it discharged Plaintiff after Plaintiff damaged a truck, tried to get it repaired without reporting his accident contrary to Collective Bargaining Agreement ("CBA") policy, and stole company time by not clocking out during the truck repair (doc. 24).    Plaintiff contends his accident took place in a construction zone and he did not think there was a safe place to stop, so he just took the truck directly to the repair garage operated by Defendant (doc. 27).    Plaintiff claims he in no way attempted to hide the fact that he had an accident, and that he thought he merely had a flat tire, which would only take twenty minutes to repair (Id.).    Plaintiff claims other UPS truck drivers have had accidents that they did not report and they were merely suspended or disciplined short of discharge (Id.).    Plaintiff claims therefore that Defendant's reason for discharging him is merely pretext (Id.).[3]

---

[2]Plaintiff has abandoned his state law age discrimination and ERISA claims.

[3]Plaintiff further develops his argument that Defendant's reasons for his termination are pretext.  Defendant's first letter to Plaintiff claimed he was terminated for alleged dishonesty, gross negligence resulting in a serious accident, and failure to report and accident (doc. 27).  Under the CBA, however, "gross negligence" constitutes damage in excess of $4,400, and in Plaintiff's case, he did not cause that much damage.  As such, Defendant issued a second letter accusing him of dishonesty and failure to report the accident, but leaving out "gross negligence."  Plaintiff contends Defendant's claim that he stole time has no basis in fact, and that a reasonable jury could accept Plaintiff's testimony that he thought it would only take 20 minutes to repair the tire and rim.  Moreover, Plaintiff contends, a reasonable jury could conclude that he did not hide his accident.  Plaintiff

As an initial matter, Defendant claims that all of Plaintiff's claims are preempted by Section 301 of the Labor Management Relations Act ("LMRA"), because in its view his claims are inextricably intertwined with the terms of the collective bargaining agreement (doc. 24). Plaintiff claims his federal ADEA and FMLA claims are not preempted, because Section 301 only applies to the resolution of state law claims (doc. 27, <u>citing</u> <u>Smolarek v. Chrysler Corp.</u>, 858 F.2d 1165, 1167-1168 (6th Cir. 1988)).

Defendant further claims there is no evidence to support Plaintiff's age discrimination claim (doc. 24). Defendant focuses its argument on the theory that Plaintiff cannot show he was treated differently than any similarly-situated non-protected employees (<u>Id</u>.). As for Plaintiff's FMLA retaliation claim, Defendant contends Plaintiff cannot establish a causal connection between his FMLA leave and the decision to terminate his employment (doc. 24). Defendant contends he has no evidence anyone ever said anything negative about the leave he took, or treated him differently upon his return (<u>Id</u>.). In fact, Defendant argues, Plaintiff was paid during his leave, which goes above and beyond the law's requirement (<u>Id</u>.). Defendant contends there is no evidence that the decision-makers who terminated him, Joe Mullikin

---

contends he spoke to numerous UPS employees about the accident, and knew that the mechanic, Darnell McCarthur, had reported it to his supervisor. Finally, Plaintiff contends that Defendant's varying stories as to how he allegedly tried to hide the accident are evidence of pretext.

or Ben Sublett, even were aware of Plaintiff's FMLA leave (Id.)

Plaintiff responds that deposition testimony shows Sublett knew of his absence, and that his termination came about six weeks after his return from FMLA-protected leave (doc. 27). In Plaintiff's view, such temporal proximity shows evidence of a causal connection (Id.). In addition, Plaintiff indicates there is evidence in the record that he reported to his doctor that "he's getting hassled from work," when the doctor determined he was not able to do over-the-road driving (Id.).

The parties fully briefed their respective positions. The Court, having the benefit of oral argument, can now render its decision in this matter.

## II.  Applicable Legal Standard

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir. 1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, "this Court must

determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." <u>Patton v. Bearden</u>, 8 F.3d 343, 346 (6th Cir. 1993), <u>quoting in part</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-252 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986); <u>see also</u> <u>LaPointe</u>, 8 F.3d at 378; <u>Guarino v. Brookfield Township Trustees</u>, 980 F.2d 399, 405 (6th Cir. 1992); <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. <u>See</u> <u>Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.</u>, 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the

motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact.  See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment."  Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989).  Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."  Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994).  Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits.  Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

        Although the non-movant need not cite specific page numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts

-6-

upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted).  In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment.  See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990).  The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962).  Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion.  See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute.  See Matsushita, 475 U.S. at 587.  The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate.  See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991).

## III.  Analysis

### A.  Age Discrimination

As an initial matter the Court notes that Plaintiff essentially conceded at the May 17, 2011 hearing that he does not

have evidence of age discrimination, as "it is true that the comparators who we have the information for are not significantly younger." The Court appreciates the candor of counsel. Although counsel requests an inference in Plaintiff's favor based on a statement in the record that there could be further personnel files in the record, the Court does not find it appropriate to grant such an inference based on speculation. Counsel for Defendant has expressed that she took every action so as to ensure the production of complete discovery, regardless of previous discovery disputes before the Magistrate Judge relating to differences in "feeder" drivers and "package" drivers. The Court takes Counsel for Defendant's representation in good faith, and concludes that there is a lack of record evidence that Plaintiff was treated differently that any one significantly younger, such that his circumstantial case for age discrimination merits dismissal.

### B. Preemption

Next, Defendant contends that Plaintiff's claims are preempted by Section 301 of the Labor Management Relations Act (docs. 24, 43). Plaintiff responds that only state claims are subject to preemption, based on Congress's intent to create uniform federal standards as to labor law, unaffected by disparities in various state laws (doc. 27). Having reviewed the parties' cited authorities, the Court concludes that courts have found some sorts of federal claims can be preempted, particularly where the claims

-8-

require an interpretation of the CBA.  <u>Martin v. Lake County Sewer Co.</u>, 269 F.3d 673, 679 (6th Cir. 2001)(an FLSA claim resting "on interpretations of the underlying collective bargaining agreement" should have been dismissed as it was not filed within the six-month statute of limitations applicable to Section 301); <u>Parker v. Metro. Transp. Auth.</u>, 97 F. Supp. 2d 437, 447-48 (S.D.N.Y. 2000)(holding ADEA and ADA claims preempted by the Railway Labor Act, which is analogous to the LMRA, because Plaintiff's case required an interpretation of the CBA).

However, not all federal claims are preempted.  The Sixth Circuit has made it clear that "the question of whether or not the plaintiff was discriminated against [is] separate from any possible defense the employer might have under the contract. . . It is irrelevant to the preemption question whether or not the employer can defend by showing it had the right under the collective bargaining agreement to do what it did." <u>O'Shea v. Detroit News</u>, 887 F.2d 683, 687 (6th Cir. 1989); <u>Knafel v. Pepsi-cola Bottlers of Akron, Inc.</u>, 899 F.2d 1473, 1482 (6th Cir. 1990)("An inquiry into the conduct of an employee and the motivation of an employer does not necessarily require an interpretation of a labor agreement").

As the <u>O'Shea</u> court put it, the ADEA action before it was not preempted by Section 301 because "employees have the right not to be discriminated against on the basis of age or handicap without

regard to the collective bargaining agreement"). 887 F.2d at 687,[4] LaPointe v. United Auto Workers, Local 600, 8 F.3d 376, 381 (1993). The Court agrees with Plaintiff's position that Section 301 generally applies to state law claims, but concludes that under federal law preemption can also apply to federal claims incorrectly framed as something other than claims interpreting a CBA.

In this case, the Court disagrees with the notion that Plaintiff has failed to bring bona fide claims that are in fact nothing more than a dispute over CBA interpretation. Section 301 does not require that all "employment-related matters involving unionized employees" be resolved through collective bargaining and thus be governed by a federal common law created by § 301. . .The Court has stated that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is preempted by § 301 or other provisions of the federal

---

[4]Defendant quotes dicta in the O'Shea opinion, in which the Court appears to have been summarizing the Defendant's contention that "The Supreme Court has held many times that § 301 of the LMRA requires that all claims, state or federal, whose resolution depends on the interpretation of a collective bargaining agreement be pre-empted by federal law." However, in the actual outcome of O'Shea, the federal claims were not preempted. Similarly, Defendant supports its position by citing Keck v. PPL Elec. Utils. Corp., which in no way stated that all ADA claims were preempted, but actually stated that Plaintiff's claim "is not preempted . . . to the extent it seeks to remedy violations of the ADA." No. 02-4071, 2003 U.S. Dist. LEXIS 12528 at *13-14 (E.D. Penn. July 21, 2003). The Keck court simply concluded that Plaintiff did not actually bring an ADA claim, but rather styled his complaint as such when it actually amounted to a dispute about the interpretation of the CBA. Id. at *14.

labor law." <u>Allis-Chalmers</u>, 471 U.S. 202, 211 (1985).

Here, Defendant raises the defense that its actions in terminating Plaintiff were justified under the CBA. However, such defense does not affect the potential for a trier of fact to find Defendant's track record in treating similarly-situated individuals differently and in reacting so harshly against Plaintiff for similar behavior, to show that its purported reliance on the CBA has no basis in fact. As such, the Court rejects Defendant's position that Plaintiff's FMLA retaliation claim is preempted.

### C. FMLA Retaliation

Defendant further contends that Plaintiff cannot establish a <u>prima</u> <u>facie</u> case of FMLA retaliation (doc. 24). Moreover, Defendant argues it had a legitimate reason to terminate Plaintiff because UPS company policy as reflected in the collective bargaining agreement requires employees to immediately report any accident. Defendant claims because Plaintiff failed to do so, it fired him. Counsel further stated that UPS fired Plaintiff for stealing company time, the hour and twenty minutes during which he was getting the repair in the company shop.

To state a <u>prima</u> <u>facie</u> case, Plaintiff must establish 1) he engaged in an activity protected by the FMLA, 2) the employer knew that he was exercising his rights under the FMLA, 3) the employer took an action adverse to the employee, and 4) there was a causal connection between the protected FMLA activity and the

adverse employment action. <u>Killiam v. Yorozu Automotive Tennessee, Inc.</u>, 454 F.3d 549, 556 (6th Cir. 2006). Once Plaintiff establishes such elements, Defendant must articulate a legitimate, non-discriminatory reason for Plaintiff's discharge, under the <u>McDonnell Douglas</u> burden-shifting analysis. Then the burden shifts back to Plaintiff to show Defendant's proffered reason was merely a pretext for discrimination. <u>Skrjanc v. Great Lakes Power Serv. Co.</u>, 272 F.3d 309, 315 (6th Cir. 2001)(<u>McDonnell Douglas</u> burden-shifting test is applicable to FMLA retaliation claims).

At the hearing, Plaintiff's counsel indicated there is really no dispute that after Plaintiff took four months of FMLA leave, Defendant terminated Plaintiff's employment approximately six weeks later. Such temporal proximity, contends Plaintiff, supports his contention that he was retaliated against for having taken FMLA leave (doc. 27, <u>citing</u> <u>Singfield v. Akron Metro. Hous. Authority</u>, 389 F.3d 555, 563 (6th Cir. 2004)(three months sufficient to find causation in a retaliation action)).

In Plaintiff's view, the fact that his medical records noted he was getting hassled from work for taking leave in 2002 show that Defendant has a history of retaliating against him for taking leave (doc. 27). After his doctor made the determination that Plaintiff was not able to do over-the-road driving, Plaintiff took a thirty-day leave (<u>Id</u>.). Nearly a year after such leave, Defendant terminated Plaintiff for the first time (<u>Id</u>.). Plaintiff

-12-

grieved such termination and was reinstated (<u>Id</u>.).

Plaintiff further contends he can show evidence of causation because the dispatch manager who supervised Plaintiff, Ben Sublett, who knew of Plaintiff's leave, did not terminate Cary Wilson, another feeder driver, who had an accident but did not take FMLA leave. Plaintiff contends Wilson did not report his accident <u>at all</u>, while Plaintiff did after only two hours. Wilson was ultimately suspended for two days, in contrast to Plaintiff's permanent termination.

Plaintiff signals that driver Owen Murphy also failed to report an accident. Murphy was reinstated after the grievance process, and Labor Manager Joe Mullikin testified he agreed with the reinstatement.

Plaintiff notes that driver Joe Willis was initially terminated for failing to report an accident, but after grieving his termination, Willis was reinstated. In addition, driver Jon Ross hit a deer and did not report it for twenty minutes. Defendant did not terminate Ross. Finally, Mullikin testified he knew of at least five other drivers who did not report accidents immediately.

Under these circumstances, contends Plaintiff, where other drivers failed to report accidents at all, the fact that he was terminated for failing to officially report his accident for two hours, should show other drivers were treated more favorably.

-13-

Having reviewed this matter, the Court finds that Plaintiff has proffered adequate evidence such that a reasonable jury could find that Defendant retaliated against him for having taken four months of FMLA leave.  His termination came only a few months after such leave, and there is evidence from which a jury could infer that at least one decision-maker involved with the termination decision was aware of his leave.  Further, the Court believes a jury could find Defendant's proffered legitimate justification for its action as pretext, taking into consideration all of the other drivers who did not report accidents at all, and who suffered much less severe consequences.  The record shows Plaintiff met performance expectations in his position, passed yearly safety reviews, and earned every promotion available to him. A reasonable jury would certainly take pause at Defendant's termination of such an employee, who had worked for nearly twenty-five years, based on the "dishonesty" of "stealing time" while getting repairs in the company shop.  Plaintiff did not attempt to hide the accident by seeking repairs secretly somewhere else.  He went to the company shop.  He may not have followed protocol correctly to the nth degree, but it strikes the Court as harsh and unfair to characterize his actions as dishonest and meriting termination.  Certainly UPS is entitled to run a tight ship, but especially when the record shows other drivers completely failed to report accidents, a jury could find such proffered justification

-14-

was not the real reason for Plaintiff's termination.  As such, the Court finds it appropriate to deny Defendant's motion as to Plaintiff's claim for FMLA retaliation.

## IV.  Conclusion

As conceded by Plaintiff, he lacks evidence supporting his claim for age discrimination.  Such claim is therefore appropriately subject to summary judgment.

The Court rejects Defendant's theory that Plaintiff's remaining FMLA retaliation claim is preempted by Section 301 of the Labor Management Relations Act.  Although the Court disagrees with Plaintiff's conclusion that preemption can only apply to state law claims, such doctrine is inapplicable in this instance.  The Court finds Plaintiff has adequately stated a prima facie case for FMLA retaliation based on the temporal proximity of his four-month leave to his termination, the knowledge of at least one-decision maker involved with his termination, and other record evidence suggesting Defendant opposed his FMLA leave.  Finally, the Court concludes a reasonable jury could find Defendant's justification for its action as pretext based on its different treatment of other drivers, and based on the harsh characterization of Plaintiff's actions, a nearly twenty-five year employee, as "dishonest," and as "stealing."  The Court expressed at the hearing and expresses again that it has never seen a situation where an employee having something repaired in a company shop could constitute stealing

time.

Accordingly, the Court GRANTS IN PART Defendant's Motion for Summary Judgment (doc. 24) as to Plaintiff's age discrimination claim, and DENIES IN PART Defendant's motion as to Plaintiff's FMLA retaliation claim.  The Court further SETS this matter for final pretrial conference on September 27, 2011, at 2:00 P.M., and for a four-day jury trial to commence October 11, 2011, on an on-deck basis.

SO ORDERED.


Dated: July 28, 2011          /s/ S. Arthur Spiegel
                              S. Arthur Spiegel
                              United States Senior District Judge